In the Matter of the Application of HORACE W. DRESSER,
Appellant.

DONNER STEEL COMPANY, INC., Respondent.

*Stocks and stockholders — corporations — motion for appointment of
appraisers to appraise value of stock owned by petitioner.*

*Matter of Dresser,* 221 App. Div. 786, affirmed.

(Argued November 22, 1927; decided February 14, 1928.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
July 5, 1927, which affirmed an order of Special Term
denying a motion for the appointment of appraisers to
appraise the value of petitioner's stock in the Donner

Steel Company, Inc., pursuant to subdivision 12 of section 38 of the Stock Corporation Law.

*E. C. Schlenker* for appellant.

*James McCormick Mitchell* for respondent.

Order affirmed, with costs; no opinion.

Concur: CARDOZO, Ch. J., POUND, LEHMAN and KELLOGG, JJ.; O'BRIEN, J., dissents in opinion in which CRANE and ANDREWS, JJ., concur. .

O'BRIEN, J. (dissenting). The issue before us is whether the authorization of new shares having preferences superior to those of the old ones alters the preferential rights of the outstanding shares. The validity of the proceedings by which the new shares were authorized is not challenged. They appear to conform with the provisions of section 36, Stock Corporation Law (Cons. Laws, ch. 59). No impropriety is suggested. The only question relates to the interpretation of the statute in respect to rights of non-consenting holders of outstanding shares. I do not see how we can affirm this order without deciding that the Legislature intended to protect one class of stockholders whose interests might be slightly injured and at the same time to withhold relief from another whose interests might be annihilated. Unless the language of the statute is so clear and positive as to leave no room for judicial interpretation, such a purpose, unjust as it seems to me, ought not to be imputed to the law-making body. The statute does not seem so clear as to require us to draw the distinction which has been made by the courts below and approved by a majority of us.

Section 37, subdivision 3-b, of the Stock Corporation Law relates to the manner of subscription and authentication of the certificate filed pursuant to section 36. It provides, " if such certificate alters the preferences of outstanding shares of any class or authorizes shares having preferences which are in any respect superior to those of outstanding shares of any class," that certain officers of the corporation shall make affidavit that they have

been authorized to execute and file the certificate by the votes of two-thirds of the outstanding shares of " each such class " entitled to vote thereon. Section 38, subdivision 12, provides that " if the certificate alters the preferential rights of any outstanding shares," any holder of such shares not voting in favor of such alteration may within a prescribed time object and demand payment for his shares and an appraisal of their value. One section uses the word " preferences " and the other " preferential rights." The use of these different words in the same statute seems to supply strong evidence of legislative intent to convey different thoughts and to deal with separate matters. A distinction seems fairly to be drawn between " preferences " and " preferential rights." One is the thing itself, the other is the right attaching to that thing. The distinction is similar in principle to that existing between property and title to it, between an office and its emoluments, between any thing and some other thing incidental to it. A preferential right, as used in section 38, subdivision 12, is such a right as attaches to any preference. Section 37, subdivision 3-b, deals with two distinct kinds of preferences, but not with any preferential right. One kind of preference exists in a particular class of stock without reference to any other class. The other kind consists in the relative positions of different classes in the capital structure of the corporation. Preferential rights attach to each. The former possesses a right, among others, to receive a prescribed dividend on a certain class of shares. The latter possesses a right to a particular position or location subject only to such classes as the certificate defines. These preferences and the rights incident to them may be changed by the filing of a new certificate as provided by section 36. When the change is made, the corporate officers must signify the nature of the change as provided by section 37, subdivision 3-b, whether the preference of a particular class has been changed, as for example, by an increase or reduction in the number of

its shares or by establishment of the right to a different dividend rate, or whether the preference of different classes has been changed by a readjustment of their positions. Even common stock possesses a preference as that word is used in the statute. Section 37, subdivision 3-b, refers to the authorization of shares having preferences superior to those of outstanding shares of *any* class. In many instances this preference can apply to the authorization of only one class of preferred stock. In such a case, that one class can have preferences superior only to those of one other class. Therefore, within the meaning of the statute, common stock must be deemed to possess some kind of a preference. Otherwise the preferences of new shares of only one class of preferred stock could not be superior to other preferences. The certificate of December 26, 1926, recognizes such a thing as a preference in common stock. It refers to the " preferences " of the seven per cent cumulative preferred stock, series B, and the common stock and makes them, in future, subject to the preferences of the authorized new stock. The preference of common stock consists in such an inferiority as is limited only to those classes of preferred stock described in the certificate. Except as so limited, it is supreme. Unless the certificate places other classes of stock ahead of it, it has all and every preference. I think section 37, subdivision 3-b, refers to two types of preference and that section 38, subdivision 12, gives its support to the rights attaching to each. When sections 36, 37 and 38 are read together their purpose is reasonably clear to me.

The result is made more nearly plain when the legislative and judicial history of the rights of non-consenting minority stockholders is traced. Prior to the enactment of chapter 354, Laws of 1901, preferred stock could not be authorized without the unanimous consent of outstanding stock (section 47, Stock Corporation Law, as added by chapter 688, Laws of 1892; *Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159, 179, 180; *Campbell* v. *American Zylonite*

*Co.*, 122 N. Y. 455, 459, 460; *Stokes* v. *Continental Trust Co.*, 186 N. Y. 285, 298.) Chapter 354, Laws 1901, amended section 47, Stock Corporation Law, as added by chapter 688, Laws 1892, and conferred authority to issue such stock when two-thirds consent. It was sustained as a valid exercise of the power reserved to the Legislature to amend corporate charters. (*Hinckley* v. *Schwarzschild & Sulzberger Co.*, 107 App. Div. 470.) No protection, however, seems to have been accorded to the non-consenting minority until the passage of chapter 787, Laws 1923, which enacted subdivision 11 (now subdivision 12) of section 38, Stock Corporation Law. This subdivision, as stated, gives to holders of non-consenting outstanding shares the right to compel appraisal and purchase by the corporation. The legislation of 1923 was passed apparently for the protection of the holders of those stocks whose preferences are changed in either of the two ways mentioned in section 37, subdivision 3-b. The recent amendment has gone so far as to indicate, I think, a legislative policy to the effect that a holder of stock, if rights relating to it are changed without his vote, shall no longer be limited to the choice of subscribing to new stock or of disposing of his holdings for whatever they may bring in the market.

Respondent admits, as I understand its argument, that the holder of stock possessing the first kind of preference described in section 37, subdivision 3-b, may compel appraisal of his shares, but refuses to recognize the second type as one possessing preferential rights within the meaning of section 38, subdivision 12. Surely, if the position of a class of stock in the capital structure subject only to certain prescribed classes of stock, constitutes a preference, then the conclusion must follow that, when the form of that structure is disturbed and an old class of stock is made subject to new classes, preferential rights of the old class are altered. No preferred stock can be issued except upon consent of two-thirds of the common. Upon the vote of two-thirds of such stock a certificate may

be filed and then are created new shares having preferences which are superior to the preferences of the common stock. The statute compels the officers of the corporation when filing the certificate which effects such a change to make affidavit that they have been authorized to execute and file the certificate by the votes of two-thirds of the common stock. By this procedure, the value of the common stock may be reduced to zero. The same result may follow when the capital structure consisting, for example, of common stock and one class of preferred stock is changed by superimposing a new preferred stock possessing rights superior both to the old preferred and the common. Respondent says, in effect, that the Legislature allows the value of these classes of old stocks to be totally destroyed without conferring upon their holders the rights to compel appraisal and purchase. Yet it concedes, as I understand its argument, that, if the rights of a particular class of stock are changed in some way other than by superadding a new class, the holder is protected. The statute, it must be confessed, is somewhat obscurely worded. The use of the words "preferences" and "preferential rights" might, perhaps, be taken to exclude common stock, because, as usually considered, common stock might not be said to possess any preference. Ordinarily the word "preference" indicates a comparison and a superiority or inferiority. When sections 36, 37 and 38 are read together, the inference may be drawn that the word "preference" was used to indicate a status rather than a comparison. Otherwise we might be driven to the conclusion that only preferred stocks were intended to be included within the benefit of the statute. Protection of preferred stocks and destruction of common seem to be contrary to the scheme of legislative policy. No substantial reason why the Legislature should seek to discriminate is suggested. The same idea of fair dealing ought to, and I think that the Legislature intended that it should apply to both. I cannot believe that any intention existed to confer a remedy upon one class and to

deny it to the other. The language of the statute may support the conclusion that all classes were intended to be treated alike.

Respondent argues that the language of section 38, subdivision 12, must, in any event, limit the right of appraisal to a case where the certificate itself alters the preferences of outstanding shares and that such a result is not effected when the certificate merely authorizes new shares with superior preferences. It stresses the distinction between *alter* and *authorize* and urges that the outstanding shares are not affected by the authorization but only by the issue of the new ones. Its argument may be reduced to the proposition that an authorization of new shares with superior preferences is something different in principle from an alteration of preferences of outstanding shares. The language of section 38, subdivision 12, as I read it, supports the opposite theory. The change in the preference of outstanding shares occurs when the certificate authorizing new shares with superior preferences is filed. A right theretofore static becomes subject to change and, therefore, the right is *altered*. It is *altered* by the *certificate* itself, because, by the terms of section 36, the filing of the certificate constitutes the power to change the different classes of stock in the corporate structure and their preferential rights. A different interpretation would render the remedy created by section 38 entirely useless. That remedy must be invoked within twenty days after the meeting at which " such alteration was authorized." The vote at the meeting constitutes the authority and the filing of the certificate constitutes the alteration. In the event that the new shares were not issued before the expiration of the twenty days after the date of the meeting at which they were authorized, a non-consenting shareholder would be without the remedy provided by the statute. Section 37, subdivision 3-b, uses the words " alters " and " authorizes." The same event is doubtless in the legislative mind when section 38, subdivision 12, uses the words " alteration " and " authorized." The

Stock Corporation Law read as a whole ought to be interpreted, I think, as conferring upon a non-consenting shareholder the right to demand an appraisal within twenty days after the preferential rights attaching to his shares have been changed in either of the two ways described in section 37, subdivision 3-b.

Section 38, subdivision 12, says that " *any* holder of such shares not voting in favor of such alteration " shall have that right. The statute does not restrict the holder to one who had the right to vote and who waived his right. It says that *any* holder " not voting in favor of such alteration " may demand payment and have his shares appraised. I can see no reason to limit the class of holders. The Legislature has included *all* who did not vote in favor. A narrow construction might injure many an innocent holder.

Accordingly, I dissent and vote for reversal.