In the Matter of the Application of FRED W. SILBERKRAUS, Respondent, for the Appraisal of Certain Stock of SCHAFFER STORES COMPANY, INC., Appellant.

In the Matter of the Application of WILLIAM H. BROWN, Respondent, for the Appraisal of Certain Stock of SCHAFFER STORES COMPANY, INC., Appellant.

In the Matter of the Application of ESTHER B. SILBERKRAUS, Respondent, for the Appraisal of Certain Stock of SCHAFFER STORES COMPANY, INC., Appellant.

Third Department, June 22, 1928.

*Harry M. Schaffer*, for the appellant.

*Naylon, Maynard, Bates & Smith* [*Chatfield T. Bates* of counsel], for the respondents.

VAN KIRK, P. J. Three owners of second preferred shares of the Schaffer Stores Company, Inc., petitioned the court for an appraisal of their shares under section 38, subdivision 11 (now subdivision 12), of the Stock Corporation Law on the ground that the preferential rights of their shares have been altered by the provisions of a new certificate of incorporation authorized by a vote of the stockholders. The three petitioners voted against the change in the certificates. The court granted the order. The question is whether the appraisal may be had.

Neither certificate is in the record, but there is no dispute as to the provisions of either, nor is there any dispute of fact in the case.

Under the old certificate the share capital stood as follows: $125,000, par value, of seven per cent cumulative first preferred shares; $125,000, par value, of second preferred shares; and 2,000 of no par common shares; the first preferred shares were entitled to a dividend preference; next thereafter the first and second preferred were equal, being entitled alike, upon distribution of assets, to payment at par before anything should be distributed to the common shares; this was the only preferential right the second preferred shares had. Under the new certificate the share capital stands as follows: $500,000, par value, of seven per cent cumulative convertible shares, preferred both as to dividends and payment at par upon distribution; 40,000 class A, no par, common shares;

2,000, class B, no par, common shares. The old first and second preferred shares are exchangeable on the basis of equal value at par for the new first preferred; no second preferred shares are authorized. In addition an old second preferred share receives one share of class A and a right to purchase two other shares of class A at $20 per share; also the new first preferred shares are callable at 110 with accrued interest.

Whether or not an appraisal may be had is to be determined under sections 21 and 38, subdivision 12, of the Stock Corporation Law.

Section 21 (as amd. by Laws of 1924, chap. 441) provides as follows: " Rights of non-consenting stockholders or the corporation on voluntary sale of franchise and property. If any stockholder not voting in favor of such proposed sale or conveyance shall * * * object to such sale, and demand payment for his shares, such stockholder or the corporation may * * * apply to the Supreme Court * * * for the appointment of three persons to appraise the value of such stock, and the court shall appoint three such appraisers, * * * with such directions in regard to their proceedings as shall be deemed proper, * * *. The charges and expenses of the appraisers shall be paid by the corporation. * * *."

This section formerly did not apply to the present case; it was made applicable by section 38, subdivision 12 (Laws of 1923, chap. 787, as renum. from subd. 11 by Laws of 1926, chap. 310), which provides: " If the certificate alters the preferential rights of any outstanding shares, any holder of such shares not voting in favor of such alteration * * * may object thereto and demand payment for his shares, and thereupon such stockholder or the corporation may have his shares appraised as provided in section twenty-one * * *."

The significant words in subdivision 12 are: " If the certificate alters the preferential rights of any outstanding shares." What are " preferential rights," what the " outstanding shares " and what the meaning of " alters? "

A " preference share " is one " giving its owner a preference either as to receipt of dividends, or as to repayment in case of winding up, or as to both." (Webster's New Internat. Dict.) Preferences as between shares are given by the certificate of incorporation only. Preferential rights are the rights so given to a class of stock. Preference shares have preferential rights; common shares have rights but not preferential rights. A corporation may issue two or more classes of shares with preferences, " but no shares which are entitled to preference in the distribution of dividends or assets shall be

designated as common stock or shares." (Stock Corp. Law, § 11, as amd. by Laws of 1926, chap. 65.) Thus common stock cannot have preferential rights within the meaning of this section.

Nor do the words " outstanding shares," in the connection used, refer to common shares. We think that those words refer only to the one class of shares which possesses the preferential right which it is claimed has been altered. Section 37, subdivision 3, paragraph (b), indicates this in these words: " if such certificate alters the preferences of outstanding shares of any class " it must be shown that this is authorized by a two-thirds vote of the outstanding shares. So in the present case, the " outstanding shares " are the second preferred shares and the preferential rights are those only which belong to the second preferred shares.

Under the statute the complaining shareholder has an absolute right to an appraisal, provided the new certificate " alters the preferential rights " of his outstanding shares. When a petition is filed the court must determine, before granting an appraisal, that a preferential right of petitioner's stock has been altered; and we think the intent of the Legislature was that the alteration must be one which infringes upon preferential rights of his stock to his prejudice. (*Matter of Timmis*, 200 N. Y. 177.) In that case the court was dealing with a sale of corporate real estate. It was necessary to construe the old section 17 of the Stock Corporation Law (Laws of 1909, chap. 61) of which the present section 21 is a substantial reenactment. The court held in effect that the section must not be construed, however broad the language used, as having another meaning than the Legislature intended; that, until a stockholder had been in some manner prejudiced by a sale of corporate property, he would not be a party in interest entitled to an appraisal of his stock; that the section was not addressed to ordinary sales, nor to those extraordinary in size but still in the regular line of its business, for such sales would have been valid without amending the Stock Corporation Law; and the court reviewed the prior sections of the statutes with reference to the sale of corporate property. The statute here should have a like construction.

There are some considerations which bear upon the purpose and intent of the Legislature in enacting subdivision 12: *First*, by the provisions of the former Stock Corporation Law, section 47 (Laws of 1892, chap. 688), it was provided: " Every domestic stock corporation may have preferred and common stock * * * if the certificate of incorporation so provides or by the unanimous consent of the stockholders; * * *." At that time and until

1901 the unanimous consent of stockholders was required to authorize the issuing of preferred stock, unless permitted by the certificate of incorporation. By chapter 354 of the Laws of 1901 that section was amended to require " the consent of the holders of record of two-thirds of the capital stock " only. In this form the statute was continued (See Laws of 1909, chap. 61, § 61), without any redress to non-consenting stockholders, until section 38, subdivision 11 (now subdivision 12), of the Stock Corporation Law was passed. (Laws of 1923, chap. 787, § 38. See, also, §§ 36, 37.) Thus for more than twenty years the preferential rights of a class of stock could be changed upon the consent of the holders of two-thirds of the capital stock of the corporation and that without limitation or burden. Then the change by the act of 1923 was made. Such a change will not be construed to extend beyond the words of the statute or the intent of the Legislature. Evidently subdivision 11 (now subdivision 12) was enacted to protect holders of preference shares from losing preferential rights and those only which belong to their shares. *Second,* common shareholders, however the share capital is changed, could not have the right to an appraisal (Stock Corp. Law, § 11, as amd. *supra*), although they are subordinated by a change in the certificate which authorizes the issuance of a new class of preference shares. (It is interesting to note here that the phrase of this section above quoted was first introduced · by the same act, of 1923, which introduced subdivision 11 [now subdivision 12]. The two amendments should be considered together.) Stock corporations generally have a right to issue preferred stock and this right has been availed of as a legitimate method of providing additional capital funds. The Legislature can and has granted this right. The funds so provided go into the treasury of the corporation and all the outstanding shares have their respective rights therein as stated in the certificate. Such issuance of preferred shares does not infringe upon the vested rights of any outstanding shares. (*Hinckley* v. *Schwarzschild & S. Co.*, 107 App. Div. 470; appeal dismissed, 193 N. Y. 599.) The issuing of preferred stock does not unlawfully deprive holders of other classes of stock of any right, nor does it do them injustice. Preferred stock cannot be sold for less than par. (Stock Corp. Law, § 69.) By issuing preferred stock the property value of the corporation is increased by the amount of the par value of the preferred stock. Thus in the instant case, if the amount of the preferred stock has been doubled when the authorized preferred stock has been issued, the money capital will have been doubled. *Third,* under section 21 (as amd. *supra*), if the preferential rights of

a stock are altered, the court shall appoint three appraisers with such directions in regard to their proceedings as shall be deemed proper. This provision is mandatory. With such directions given to the appraisers as are contained in the order in the present case, a very substantial burden and expense would be placed upon the corporation in the present day when corporations are so large and have extensive plants in numbers of places. It can hardly be presumed that the Legislature intended to require such expense and inconvenience, except upon the application of a party having a real interest.

Subdivision 12 has been before the Court of Appeals in *Matter of Dresser* (247 N. Y. 553). In that case the Special Term denied a motion for an appraisal. This order was affirmed in the Appellate Division without opinion (221 App. Div. 786). The Court of Appeals affirmed the Appellate Division without opinion by the majority, but a dissenting opinion was filed. The petitioner in that case owned 100 shares of class B, seven per cent cumulative preferred stock, and 100 shares of the common stock of the corporation. The new certificate authorized the issuance of 30,000 shares of eight per cent cumulative prior preference stock of the par value of $100 each, and 460,000 shares of stock without par value. Both of these classes of stock were new and not to take the place of old shares, although rights of exchange and to subscribe *pro rata* for the new shares were given to outstanding shares. There was no change in the new certificate in respect to the preferences given to the complaining stock. We infer that the Court of Appeals based its decision upon the fact that the preferences given to the complaining stock in the old certificate were in no respect changed; it must have been held that a certificate which authorized new preferred shares, superior to all outstanding shares of the company, did not alter the preferential rights of those " outstanding shares; " that the preferential rights referred to were those only of the class which was complaining of an alteration.

The vital question in the present case is: Has the one preferential right belonging to the old second preferred stock been altered? While the case is not identical in its facts with the *Dresser* case, in our view there is no substantial difference. The change is in name only. Under the old certificate the second preferred stock was, in respect to its one preference, the first preferred stock and, under the new certificate, it is first preferred stock. There is no change in its preferential right. It is true that, in all other respects under the old certificate, this stock was a common stock, having the right to dividends in such amount, or no dividends, as the earnings

justified and the directors determined. It is said that this stock had received as high as ten per cent dividends. But such dividends, however large, were in no sense connected with, or due to, a preferential right. Again, under the new certificate, there has been a change — a seven per cent cumulative dividend is given the old shares when exchanged. But this is a change to the advantage of the stockholder in respect to his preferential rights.

There remains the right to call and retire the new first preferred stock at 110 and accrued interest. This is not a preferential right running with the stock; it is a privilege reserved to the corporation, a privilege often reserved as to bonds bearing a high rate of interest and as to a stock which is assured a high dividend rate. But this privilege does not alter the one old preferential right. It may shorten the life of the stock and thus the stockholder will lose his seven per cent dividend; but this was not a preferential right under the old certificate and so is not a material consideration here. If the stock be called, the stockholder will receive not only that which his sole preferential right assured him, but also a bonus of ten per cent of which he was not assured. That he may be paid before the obligation is expected to be due can hardly be a result to his prejudice. Strictly there is no alteration of the existing preferential right. Where a preference is paid in full no further payment in that respect may be had. (*Equitable Life Assurance Society* v. *Union Pacific R. R. Co.*, 212 N. Y. 360; *Williams* v. *Renshaw*, 220 App. Div. 39.)

This is not an equity action, in which is considered the relative values of shares, but is a statutory proceeding limited to the terms and intent of the statute. We think we should exclude from consideration the relative values to the shareholder of that which he had before and that which he will have after the reclassification of the share capital. The future value of shares must ever be uncertain; business involves many risks. In this case how could a court estimate these relative values? To do so would require a full appraisal of the corporation's property, offset by its liabilities and then a rough guess as to the probable success of the business with its new capital as compared with its probable success with its old capital. This, we think, the Legislature did not intend to require in order to determine whether the shareholder's preferential rights had been altered. It required an appraisal, but only after the court had determined that his preferential rights had been altered. In our view we are dealing solely with the preferential right which belonged to a second preferred share.

We, therefore, conclude that no preferential right belonging to the old second preferred stock has been altered.

The order should be reversed and the motion denied, with costs, as stipulated by the parties.

HINMAN and HASBROUCK, JJ., concur; DAVIS, J., dissents, with an opinion in which HILL, J., concurs.

DAVIS, J. (dissenting). That there was an alteration in the preferential rights of the shares of the petitioners is not in dispute. But it is claimed that the change is benevolent and advantageous to the protesting shareholders, so that they have no real grievance. They had shares preferred upon distribution of assets. There seems to have been no stated preference as to dividends, but as a right practical in its nature the holders of the second preferred shares had received each year ten per cent in dividends. So far as it appears this stock was a permanent issue and non-callable. This gave each shareholder a fixed right in the division of the profits or earnings of the corporation so long as it existed, and a definite right to share in its assets with a limited number of other shareholders when it was dissolved. (*Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159, 179, 180; *Campbell* v. *A. Z. Co.,* 122 id. 455.) If changes are made in the capital structure, the provisions of statutes permitting reorganization must be strictly followed, if existing rights are affected. Here the " reclassification " advanced the preference of the substituted preferred shares to an equality with the old first preferred. This was a distinct advantage. The new stock was limited in its rights as to dividends to seven per cent and it lost its right to permanence by being callable at 110 which would naturally affect its investment value. Apparently it also lost its right to greater annual profits and to share in the increment of capital accumulated from undistributed surplus; and in case of losses followed by dissolution, the distribution of assets would be among a greater number of shares. As a matter of individual judgment these new conditions might be deemed disadvantageous.

The rights given in the original shares, taken together, seem to be preferential in their nature. Now the objecting stockholders must surrender their old shares representing vested rights and accept in lieu thereof new shares containing conditions which they deem less favorable as an investment. Some consideration must be given to the judgment of the stockholder himself as to whether the change is advantageous, if his decision is based on reason. If he desired a fixed dividend on a callable stock, then he has been benefited. But if he wished greater possibilities of return and a permanent investment having greater market value, he is a loser by the change. In a practical test he will no longer have the right to receive a larger dividend; and his interest in the company may be

discharged against his will by the call of the stock. Alteration there has been in preferential rights and it cannot be said as a matter of law that the alteration is entirely beneficial.

It has been the policy of the courts to protect minority stockholders from illegal or unreasonable invasion of their rights. Originally it was necessary for such shareholders to bring an action in equity to protect themselves against the action of a corporation which " takes hold of the shares of its capital stock already sold and in the hands of lawful owners," and makes changes destroying the equality of shares and taking away rights which originally existed. (*Kent* v. *Quicksilver Mining Co.*, *supra*, 180.) I think the statute relied on here is intended to provide a more simple and summary remedy to a shareholder who objects to a new plan of organization which impairs his vested rights. Those who have faith in the success of the venture may readily relieve themselves of the incubus of less sanguine associates. There is no injustice in paying to the holder of shares the fair value thereof from the vested property interests, and selling the new shares to those more hopeful and venturesome.

In *Matter of Dresser* (247 N. Y. 553) it was decided in the Court of Appeals by a narrow majority that superimposing a new preferred stock upon the old issues of stock did not so alter the preferential rights of the latter that appraisal would be granted. There the stock remained as it was. There was not, as here, destruction of the identity of the shares, and no surrender of shares to be replaced with others containing different conditions. I do not find that case decisive of the question to be determined here.

I favor affirmance.

HILL, J., concurs.

Order reversed on the law and motion denied, with costs, as stipulated by the parties.