In the Matter of NEW YORK HANSEATIC CORPORATION et al., as Stockholders in KINGS COUNTY LIGHTING COMPANY, Petitioners. KINGS COUNTY LIGHTING COMPANY, Respondent.

Supreme Court, Special Term, Kings County, February 23, 1951.

*Boehm & Fischman* for Richard L. Rosenthal and another, petitioners.

*Rogers & Condon* for New York Hanseatic Corporation and another, petitioners.

*Levien, Singer & Neuburger* for respondent.

MURPHY, J. My determination of the subject motions will be stated first and my reasons therefor will follow:

1. The motions made by the petitioner stockholders representing both preferred and common stock for the appointment of an appraiser to determine the value of their stock are granted.

2. The application contained in the respondent's cross motions for an order consolidating the subject proceedings is granted.

3. The application by the respondent for a stay of all proceedings pending the filing by the company of its proposed restated certificate of incorporation in the office of the Secretary of State is disposed of as follows: The appraiser, who will be appointed under the order to be signed by the court, is directed, for the time being, not to begin his duties of appraisal until the Public Service Commission approves the proposed restated certificate of incorporation. If the said commission does not approve said certificate within thirty days after the entry of the order to be entered hereunder, then the appraiser and the attorneys for all of the parties will confer with the court regarding further directions. This conference may be arranged with the court informally by telephone.

4. The proceeding instituted by the petitioner Paul Herzog under date of January 8, 1951, is dismissed in view of the fact that his petition of January 10, 1951, was signed by him personally. His petition of January 10, 1951, will not be disturbed.

## The Facts Briefly

The petitioners herein are owners of a minority of the preferred and common stock of the Kings County Lighting Company. The amount of stock owned by the petitioners is immaterial in the determination of these motions.

The petitioners seek an order by this court appointing an appraiser to evaluate their stock under the relevant provisions of the Stock Corporation Law.

Prior to November 24, 1950, the certificate of incorporation of the respondent company contained certain restrictions on the payment of dividends on common stock and also provided that common stockholders would have the right to cumulative voting. We shall first consider that aspect which relates to the preferred stock.

The restrictions of the certificate of incorporation with respect to the payment of dividends on common stock were substantially as follows:

" A. If the common stock equity drops below 20% of total capitalization and surplus, dividends on the common stock cannot be paid in excess of 50% of the net income available for dividends on common stock.

" B. If common stock equity drops below 25% but is more than 20% of the total capitalization and surplus, dividends on the common stock cannot be paid in excess of 75% of the net income available for dividends on the common stock."

The aforesaid restrictions on the declaration of common stock dividends are referred to in the proxy statement dated October 16, 1950, as the " formula restrictions ".

These restrictions were removed from the certificate of incorporation by the overwhelming vote of preferred and common stockholders at a special meeting duly called and held on November 24, 1950. The amended certificate provides that common stock dividends may be declared in the discretion of the board of directors after full dividends on the preferred stock shall have been paid or declared and set apart for payment. The petitioners have complied with the statute in every respect with regard to filing their objections to the amendments removing the formula restrictions.

The first question which the court must therefore determine is whether the preferred stockholders herein are entitled to the appointment of an appraiser to evaluate their stock because of the aforesaid changes in the certificate of incorporation.

Paragraph (a) of subdivision 11 of section 38 of the Stock Corporation Law provides that a stockholder is entitled to demand appraisal of and payment for his stock if the amendment of the certificate of incorporation " alters or abolishes any preferential right of any outstanding shares having preferences, affecting the holders of such shares adversely ".

The proxy statement sent to stockholders by the company for the November 24, 1950, special meeting contains the following statement: " The Board of Directors recommends the retention of the first restriction so as to assure that at all times full cumulative dividends upon the preferred stock, as well as dividends for the current period, shall have been paid or declared and set apart for payment prior to the declaration of dividends on the common stock; but it recommends the elimination of the formula restrictions which in effect may limit the discretion of the Board of Directors with respect to the declaration of dividends upon the common stock of the Company, *although the elimination thereof may have the effect of reducing the protection presently afforded the preferred stock.*" (Italics mine.)

Hence it is that the court has before it the frank and honest admission of the respondent company that the elimination of the formula restrictions will have the effect of reducing the protection heretofore enjoyed by the preferred stock. That this is true appears to the court to be inescapable because under the formula restrictions the preferred stockholders were assured that specific funds of the corporation available for common stock dividends would be retained by the company as assets. In other words, a cushion of assets had to be set aside by the directors in the event that the common stock equity dropped below certain percentages. The elimination of this protection obviously has an adverse effect upon the preferred stock.

The arithmetic of the situation is undoubtedly the best proof of the possible loss of protection to the preferred stockholders caused by the removal of the formula restrictions. For instance, if the sum of $50,000 were available for common stock dividends in a given year, and if at the same time the common stock equity dropped below 20% of total capitalization and surplus, dividends on the common stock would be limited to a total of $25,000 while the remaining $25,000 would be retained as assets of the company. This reservation of assets would be a protection to pre-

ferred stockholders in the event of a subsequent dissolution of the company and also with regard to the payment of future dividends on the preferred stock.

Distinguished counsel for the company, on page 8 of their brief, argue as follows: "So here, the preferred stock of the company remains, in theory at least, wholly unchanged. The value of its preferences may or may not be affected by the proposed change relating to the rights of the common stock; but the rights of the preferred stock themselves in theory are not changed and remain constant. The distinction is a fine one and may seem to constitute legal 'hairsplitting'; but it has been recognized and followed by the highest court of the state; and the rule established by the court has not been altered by the legislature, although it has on several occasions, since the decisions cited, seen fit to alter the appraisal statutes in other particulars."

An analysis of the decisions cited by the company's counsel does not lead this court to feel restrained by the determinations of our higher courts. The adverse effect upon the preferred stock in the instant case appears to me to be so obvious that, despite my respect for the aforesaid decisions and for the eminence of company counsel, I feel it my duty to grant the petition of the preferred stockholders herein. If the decisions cited by respondent's counsel hold that this court could not and should not appoint an appraiser in cases where preferential *rights* are adversely affected with respect to "reduction of protection", then this court is wrong in its determination. With great respect, however, I urge that to give such an interpretation would be both narrow and unwise.

It is significant to note that the words "affecting the holders of such shares adversely" were added to the statute in 1943. (L. 1943, ch. 600.) The cases on which respondent mainly relies, *Matter of Dresser* (247 N. Y. 553) and *Matter of Silberkraus* (250 N. Y. 242) were decided, respectively, in 1928 and 1929. It might be argued that the statute always meant or implied that a "preferential right" is altered only when it is affected adversely, but it could also be argued that the Legislature intended to broaden or fortify or clarify the provision when, in 1943, it added the words "affecting the holders of such shares adversely."

In this general regard it is interesting to note the language of Judge O'Brien, who wrote the main opinion in the *Silberkraus* case (*supra*, p. 246): "After the conclusion has been reached that preferential rights of outstanding shares have been altered

by the certificate, the value of those shares immediately prior to the alteration becomes the central point for consideration. A right may be altered without inflicting damage. Often a benefit may accrue. When, as a matter of law, the conclusion cannot be avoided that the alteration has produced advantages to the outstanding shares, the holder might not become entitled to purely theoretical and technical relief. When, however, the result of the alteration is not entirely clear, the wishes of the stockholder rather than the conception of the courts should prevail. Let him be the one to decide whether he shall avail himself of the opportunity to acquire new stock which he deems of lesser worth or whether he shall take the appraised value of his outstanding shares. Here a serious question arises whether appellants are benefited by the change. The majority stockholders think they are, but these appellants take a different view. The stock which they now own paid dividends of ten per cent. The new stock is limited to seven per cent. The old shares might acquire a market value far in excess of par. The new shares are callable at 110. Under the old certificate, only $250,000 of stock was entitled to par on the distribution of assets, while under the new one twice that amount can participate. Since the question of benefit is arguable, the better result can be attained by intrusting the stockholder with power to decide. That, we think, is the purpose of the statute. (*Matter of Timmis*, 200 N. Y. 177.) "

When the certificate of incorporation is changed so as to affect the rights of stockholders it is an alteration in the conditions under which the existing stockholders purchased their stock in the corporation, and an alteration such as we have before us here comes within the purview of the statute.

If the subject provisions of the Stock Corporation Law were not meant to protect stockholders who lose protection for their holdings, what other courses of action would be available to the preferred stockholders here? Presumably, they could retain their stock and determine at a later date whether or not to sell; or, they could sell immediately at the open market sales price. If these courses appeared to be disadvantageous, they would be without remedy if the law did not afford them the right of appraisal of their stock. I think it does.

As to the common stock: as hereinbefore indicated the certificate of incorporation of Kings County Lighting Company provided for cumulative voting by the holders of the common stock. This provision was added to the charter in connection with the recapitalization of the company in 1947, at which time the

Securities and Exchange Commission required the inclusion of cumulative voting provisions in connection with reorganizations under the Holding Company Act.

The opinion of that commission at the time it approved the reorganization contained the following statement: "The amended plan provides for the election of a new board of directors by means of a procedure which is substantially similar to that which we have prescribed in certain other cases involving a redistribution of voting power, and we find that such procedure is appropriate."

Under cumulative voting each common stockholder could multiply his votes by the number of directors to be elected (nine under the present by-laws of Kings County Lighting Company), and distribute them among the candidates in any manner he saw fit.

This court is of the opinion that the right to cumulative voting is a valuable one for minority stockholders. Such stockholders may not be able to elect any directors without cumulative voting, but with it the minority stockholders may elect at least one or two, or possibly more, members of a board, depending upon the number on such board and the cumulative voting strength of the minority. The taking away of this right by the respondent company, however meritorious the proposal is from a corporate viewpoint and perhaps from the viewpoint of the majority of stockholders, constitutes the elimination of a substantial right which in the opinion of this court entitles the affected common stockholders to an appraisal of their stock under the provisions of the Stock Corporation Law.

Settle order on notice.