In the Matter of VALLIE G. KINNEY et al., Appellants.
G. R. KINNEY Co., INC., Respondent.

Argued November 21, 1938; decided January 10, 1939.

*Saul Gordon* and *Alex M. Hamburg* for appellants. The preference of the eight-dollar cumulative preferred stock of the petitioners, on distribution of assets at dissolution, has been materially altered and changed, and, therefore, their petition for appraisal should have been granted. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *Matter of Silberkraus*, 250 N. Y. 242.) The amending certificate materially altered and changed the preferential rights of the holders of the old preferred stock in the distribution of assets on dissolution and, therefore, the petition for appraisal should have been granted. (*Matter of Silberkraus*, 250 N. Y. 242; *Matter of International Superpower Corp.*, 236 App. Div. 791; 261 N. Y. 538.)

The superimposition of the new preferred stock, with new priorities, upon the old preferred stock was a material alteration of the preferential rights of the old preferred stock, for the certificate of incorporation, prior to the amendment, guaranteed the maintenance of an equal status between the old preferred stock and any other class of preferred stock. (*Pronick* v. *Spirits Distributing Co.*, 58 N. J. Eq. 97; *Breslav* v. *N. Y. & Queens Electric Light & Power Co.*, 249 App. Div. 181; 273 N. Y. 593 *Matter of International Superpower Corp.*, 261 N. Y. 538; *Matter of Silberkraus*, 250 N. Y. 242.) The reduction of capital effected by the amended certificate of incorporation constitutes a material alteration of the preferential rights of the eight-dollar cumulative preferred stock, which entitles the petitioners to have their stock appraised. (*Matter of International Superpower Corp.*, 236 App. Div. 791; 261 N. Y. 538; *Matter of Silberkraus*, 250 N. Y. 242.)

*Paul Armitage, Archibald Douglas* and *Edward Holloway* for respondent. The creation of a new class of prior preferred stock given a superiority in assets on dissolution over an old preferred stock does not " alter the preferential rights " of the old preferred stockholder within the statute granting a right of appraisal. (*Matter of Dresser*, 247 N. Y. 553; *Matter of Silberkraus*, 250 N. Y. 242; *Breslav* v. *N. Y. & Queens Electric Light & Power Co.*, 249 App. Div. 181; 273 N. Y. 593; *Matter of International Superpower Corp.*, 236 App. Div. 791; 261 N. Y. 538; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *Campbell* v. *American Zylonite Co.*, 122 N. Y. 455; *Stokes* v. *Continental Trust Co.*, 186 N. Y. 285; *Hinckley* v. *Schwarzschild & S. Co.*, 107 App. Div. 470.)

FINCH, J. Respondent G. R. Kinney Co., Inc., is a domestic corporation. Prior to the recapitalization on June 17, 1937, it had issued and had outstanding two classes of stock, 50,479 shares of eight-dollar cumulative preferred, and 160,000 shares of common, both without

par value. There was also authorized but unissued a class of $100 par value preferred stock consisting of 15,453 shares.

The eight-dollar cumulative no par value preferred stock was entitled to the dividend of eight dollars per share annually before payment of any dividends on the common stock. Upon dissolution or liquidation each holder was entitled to receive $100 per share and all accrued dividends before any payment in distribution might be made on the common stock. Upon redemption this preferred stock was entitled to preference over the common stock to the extent of $115 per share, plus all unpaid dividends.

Immediately prior to recapitalization, the stated capital of the Kinney Company, as shown by its books, was as follows:

| | |
|---|---|
| 50,479 shares of $8 cumulative preferred stock at a stated value of $50 per share.. | $2,523,950 |
| 160,000 shares of common stock at a stated value of $10 per share............... | 1,600,000 |
| Total stated value................ | $4,123,950 |

Up to the date of the plan for recapitalization, there were arrears of dividends on this cumulative preferred stock amounting to $47.66 2/3 per share, or a total of $2,406,165.67.

At a meeting of stockholders of the Kinney Company held May 12, 1937, a written plan of recapitalization was duly authorized over the objection of Alex M. Hamburg, one of the petitioners, by the holders of two-thirds of the preferred and common stock. Thereafter, on June 17, 1937, an amendatory certificate of incorporation in two parts, which together carried out the plan of recapitalization, was duly filed with the Secretary of State.

Through these amendments there was created a new class of preferred stock consisting of 67,306 shares of

five-dollar cumulative prior preferred stock, which was given priority over the existing eight-dollar cumulative preferred stock, both as to the payment of dividends and as to prior claim upon distribution of assets. In the event of dissolution, the five-dollar cumulative new preferred was entitled to $105 per share, if voluntary, and to $100 per share if involuntary, before any distribution was made on the old eight-dollar preferred or on the common stock. The board of directors might prepay dividends or redeem at $105 or purchase at private sale, the whole or any part of this five-dollar prior preferred stock. If either the amount earned annually, or the assets upon distribution should prove insufficient to permit full payment to the new preferred, then the entire amount available was to be distributed ratably only among the holders of the new preferred, to the exclusion of the old preferred and the common stock.

The number of shares of common stock was increased from 160,000 to 210,000.

The amended certificate reduced the stated capital of the corporation to $2,687,350 and changed the common stock from a no par value stock with a stated value of ten dollars a share to a par value stock with a par value of one dollar a share.

The resulting reduction in the stated capital, totaling $1,440,000, was transferred to surplus.

The five-dollar cumulative prior preferred stock and the common stock were offered in exchange for the eight-dollar cumulative preferred stock at the rate of one and one-third shares of five-dollar cumulative prior preferred stock and one share of common stock for each share of eight-dollar cumulative preferred stock.

There was eliminated from the certificate of incorporation the following provision: " The holders of preferred shares of One Hundred ($100) Dollars par value and preferred shares of no par value shall share ratably in all preferences and privileges and no issued

stock of one class of preferred stock shall in any way be superior to the other."

The petitioners, having duly filed their petition, requested an appraisal of, and payment for, their shares of old preferred stock. The application was denied at Special Term, and such denial affirmed at the Appellate Division, two justices dissenting.

The sole question is whether the holders of the old preferred stock have had their preferential rights altered by the amended certificate of incorporation and may claim appraisal and payment in accordance with the provisions of the Stock Corporation Law (Cons. Laws, ch. 59, § 38, subd. 12 [now subd. 9]). This provision of the Stock Corporation Law reads as follows: " If the certificate alters the preferential rights of any outstanding shares, any holder of such shares not voting in favor of such alteration may * * * object to such alteration and demand payment for his stock, and thereupon such stockholder or the corporation shall have the right, subject to the conditions and provisions of section twenty-one, to have such stock appraised and paid for as provided in said section."

In *Matter of Dresser* (247 N. Y. 553) we held that such statute has no application where the preferential rights of one class of outstanding stock over another class are left unchanged by the amended certificate, but both classes of such outstanding stock are made subject to the preferential rights of a new class of stock to be issued. The old preferred was not retired in *Matter of Dresser*, and while the value of the old stock may have been affected, the preferential rights remained the same, subject only to the preference of the new class. In other words, the authorization of a new class of preferred stock, which is to be superimposed upon an outstanding preferred stock, does not " alter the preferential rights " as between the classes of the shares of the corporation which were outstanding prior to the time that the new class of

preferred stock was superimposed, and hence does not warrant an appraisal within the terms of the Stock Corporation Law (§ 38, subd. 12 [now subd. 9]).

On the other hand, in *Matter of Silberkraus* (250 N. Y. 242) a different state of facts was presented. There the preferential rights of the old stock were not preserved. The stock itself ceased to exist. It was not only involuntarily retired, but the new class of preferred stock created by the new certificate provided changed preferential rights and new restrictions upon rights which had previously inhered in the preferred stock now eliminated. In other words, there we had a case where the preferential rights of the outstanding preferred stock were altered as between it and the common stock. Whether these changes would prove beneficial or detrimental to those who had previously held the old preferred stock, we did not inquire. It was sufficient that the amended certificate changed these rights as between the outstanding preferred stock and the common stock. In other words, considering the development of this right of appraisal and the wording of the Stock Corporation Law, we interpreted the intention of the Legislature as shown by the statute to permit an appraisal where an alteration changed the preferential rights within the corporation as between different classes of stock. If there is no change in this relationship, the fact that both preferred and common are subject to a bond issue, or to an issue of preferred stock, taking preference over all classes of old, outstanding stock theretofore existing in the corporate structure, the statute is not violated.

The history of the creation of this right of appraisal for dissenting stockholders and a consideration of the language employed in section 37, which immediately precedes this section 38, of the Stock Corporation Law, both confirm our conclusion.

Prior to 1901 under the law of this State, a corporation had no power to issue new preferred stock without unani-

mous consent. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 179, 180; Stock Corporation Law, § 47; Laws of 1892, ch. 688.) In 1901 the Legislature enacted a statute (L. 1901, ch. 354, § 1, amdg. § 47 of Stock Corporation Law) which authorized every corporation to issue a new preferred stock with the consent of two-thirds of the stockholders. This was sustained as a valid exercise of the power reserved to the Legislature. (*Hinckley* v. *Schwarszchild & Sulzberger Co.*, 107 App. Div. 470; appeal dismissed, 193 N. Y. 599.) Up to 1921 no protection appears to have been afforded to non-consenting minority stockholders. In 1921 (Laws of 1921, ch. 694, § 6, amdg. § 24 of Stock Corporation Law) the Legislature granted to the holders of a majority of outstanding shares the right to change such shares from par value into no par value. Along with this, a right of appraisal was given to non-consenting stockholders on account of this change in the capital structure of the corporation. In 1923 (L. 1923, ch. 787) the Legislature granted to stockholders of every corporation the right to classify or reclassify any shares, and permitted the issuance of new shares having precedence and priority over any classes theretofore authorized, if such stockholders approved the change by a two-thirds vote. Thus this section 37 of the Stock Corporation Law (subd. 3-c) gave to two-thirds of the stockholders of each class both the right to " alter preferences " as between the different classes of old stock, or " authorize " new shares with " prior preferences." Section 38 gave a right of appraisal only in cases of " alterations," and did not give such right of appraisal in case of " authorization " of new shares. Therefore, both a tracing of the history of this branch of the law and a reading of these sections 37 and 38 of the Stock Corporation Law confirm our conclusion that section 38 permits an appraisal only when an amended certificate alters the preferential rights of the outstanding stock of a corporation as between the different classes of stock and that it does not apply to a case where such rights are left

unchanged as between themselves, but are both made subject to a new issue of stock. Judged by these principles, that portion of the certificate providing that the eight-dollar cumulative preferred stock should be subject to the new preferential rights of the five-dollar cumulative prior preferred, is valid and confers on the appellant no right to an appraisal.

We are thus brought to a consideration of the provision of the amended certificate which reduced the stated capital of the corporation to $2,678,350 and changed the common stock from a no par value stock with a stated value of ten dollars a share to a par value stock with a par value of one dollar a share; the resulting reduction in the stated capital, totaling $1,440,000, being thereby transferred to surplus. Prior to such transfer, the eight-dollar cumulative preferred stock was in a position to benefit from the earning power of such capital, and in the event of liquidation or dissolution such capital would be available for distribution to such stockholders, subject only to diminution by losses in business operations. It could not have been used for dividends or for the purchase of any shares of stock. When this sum of $1,440,000, amounting to about one-third of the capital of the corporation, was transferred from capital to surplus, the eight-dollar cumulative preferred stock lost its right to rely upon this portion of capital. The capital structure was so altered that it was placed within the power of the corporation to deprive forever the preferred stockholders of their preferential rights in regard to this portion of the capital structure. In brief this $1,440,000 was in itself a security of approximately twenty-eight dollars for each share of the old preferred stock and has now by this amendment of the certificate of incorporation become a surplus that may no longer support such stock.

The reduction in capital constitutes a material alteration of the preferential rights of the old preferred for it has reduced materially and finally the amount of stated capital which theretofore had safeguarded the preferential rights of the old preferred stock. Respondent

urges that because two-thirds of the common and preferred stockholders passed a resolution authorizing the board of directors, or the appropriate officers of the company, to reduce the good will of the company as shown on the balance sheet from $2,480,050 to a nominal amount of one dollar by applying the difference against the capital surplus, the transfer from capital to surplus may be disregarded. The appellant, on the other hand, contends that this transmutation from capital to surplus leaves the directors free to use that surplus in the purchase of outstanding shares of common and new preferred stock, or in the payments of dividends on the new preferred stock, thus reducing the stated capital which before recapitalization supported the old preferred stock and its preferential rights. But with these various contentions we are not concerned. Our concern is with the alteration provided by the certificate of incorporation, and with what the basic charter of the corporation makes lawful when carried out by appropriate by-law and resolution, and not by what may happen after the amendment of the certificate of incorporation. This also is the command of the statute. " If the *certificate* alters the preferential rights of any outstanding shares " (italics interpolated), the objecting stockholder may demand appraisal and payment.

The appellants' objection that the amendatory certificate omits that portion of the former certificate which provides that the holders of the eight-dollar cumulative preferred shares and the holders of the unissued 15,453 shares of stock of $100 par value shall share ratably in all preferences and privileges, " and no issued stock of one class of preferred stock shall in any way be superior to the other," is without merit. Since the quoted portion is in the same sentence which provides that the holders of these two classes of stock shall share ratably in all preferences and privileges, it is clear that the language so stricken out related solely to those two classes of stock.

As the amended certificate abolished the authorized but unissued 15,453 shares of $100 par value preferred stock, the provision in the old certificate relating to this unissued stock was properly eliminated as unnecessary.

It follows that the orders should be reversed, with costs in all courts, and the application granted. The motion to dismiss the appeals should be denied.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Ordered accordingly.