CHARLES STEWART DAVISON and EVERETT L. THOMPSON, etc., Plaintiffs, *v.* PARKE, AUSTIN & LIPSCOMB, INC., and Others, Defendants.

Supreme Court, Special Term, New York County, April 10, 1940.

*Charles Stewart Davison* and *Frank C. Mebane, Jr.,* for the plaintiffs.

*Brodek & Eisner,* for the defendants.

BERNSTEIN, J. The plaintiffs seek to nullify a readjustment of the capital structure of the defendant Parke, Austin & Lipscomb, Inc., made in November, 1935, whereby the preferred stock of the corporation was changed into common. Two grounds of action are set forth, *first,* that the readjustment deprived the plaintiffs of substantial rights as stockholders, and, *second,* that the change was effected without proper legal notice.

The action was brought not only against the corporation but also against a number of individuals who were described as directors, officers and principal stockholders of the corporation. Since it was not a representative action brought for the benefit of the corporation

and the individuals were not responsible to the plaintiffs for their acts, the complaint was dismissed as against such individual defendants early in the trial.

The corporate defendant was organized in 1914 under the laws of the State of New York. By an amendment to its certificate of incorporation, filed in November, 1927, it was authorized to issue 80,000 shares of common stock without par value and 30,000 shares of convertible participating preferred stock without par value. The preferred stock was entitled to cumulative dividends of two dollars per share and to participation in additional dividends after the payment of two dollars per share on the common stock. There was also to be a sinking fund maintained by cumulative semi-annual payments of $12,500 each for the redemption of such preferred stock at a price not to exceed thirty dollars per share, plus dividends accrued thereon or in arrears.

In October, 1935, there were outstanding 16,523 shares of preferred stock and 49,210 shares of common stock. No dividends of any kind had been earned or paid and no payment to the sinking fund had been made since October, 1932. The corporation was heavily indebted to several of its officers and needed further financing. Those officers were willing to extend their loans and to advance further funds on condition that the preferred stockholders were willing to co-operate in eliminating the burden imposed on the corporation by the preferred stock requirements. Accordingly, they proposed and recommended to their stockholders a plan under which the capital stock was to be reduced from 110,000 shares to 80,000 shares, all common stock without par value, each share of preferred stock was to be exchanged for one and one-half shares of new common stock, each share of common stock was to be exchanged for one share of new common stock, and the accumulated dividends and sinking fund arrears were to be eliminated.

On October 28, 1935, a notice of a special meeting, to be held on November 14, 1935, to authorize the proposed changes, was sent to all stockholders, common and preferred, with a letter of the president recommending the adoption of the plan. More than two-thirds of each class of stock was represented at the ensuing meeting and voted in favor of the changes. The plaintiff Thompson, holder of 100 shares of preferred stock, was present and voted in the negative, but made no objection to the procedure. The plaintiff Davison, holder of 150 shares of the same stock, was not present, and registered his first objection only a year later, when the corporation declared its first dividend on the new stock. Of the total of 16,523 shares of preferred stock outstanding at the date of the meeting, 15,832 shares were turned in for conversion, and the

holders of 245 shares consented to the plan but never made the exchange. In pursuance of the action taken at the meeting, the certificate required by section 36 of the Stock Corporation Law was filed on December 2, 1935.

The plaintiffs' contention that the defendant had no power to change its preferred stock into common stock without *their* consents is utterly unsound. It is urged by them on the authority of *Roberts* v. *Roberts-Wicks Co.* (184 N. Y. 257), which was decided under the Stock Corporation Law of 1892, as it stood at that time. Since 1901 amendments have been adopted to authorize a variety of changes in outstanding stock, including the alteration or abolition of preferences, whenever consented to by the vote of two-thirds of the stockholders affected. (*Matter of Silberkraus*, 250 N. Y. 242; *Brill* v. *Kinney & Co., Inc.*, N. Y. L. J. Dec. 22, 1938, p. 2278.) Concomitantly with these changes, dissenting stockholders were given the right of appraisal of their stock and payment therefor. (*Matter of Kinney*, 279 N. Y. 423; *Matter of Fulton*, 257 id. 487; *Nichols* v. *New York Central Electric Corp.*, N. Y. L. J., April 10, 1937, p. 1792.)

The changes made in the capital structure of the defendant in 1935 had the approval of the requisite number of stockholders of each class. While the retirement of the preferred stock destroyed their preferential rights, the plaintiffs were left with the option of either exchanging their preferred stock for the new common stock authorized under the amendment or taking the appraisal value of their outstanding shares. The exercise by them of the first alternative would result in approval of the changes; the exercise of the second would provide compensation for accrued dividends and surplus. In either event no loss or damage could arise and no substantial rights could be impaired. (*Matter of Silberkraus, supra.*) This leaves for determination only the question as to whether the readjustment of November, 1935, was effected with due regard to legal requirements.

Under the 1927 amendment to the defendant's certificate of incorporation the voting power was, with a few exceptions not here pertinent, lodged exclusively in the holders of the common stock. By paragraph (10) of such amendment it was provided that "*at least thirty days prior to any* reorganization of the corporation, or *reclassification of its capital stock*, * * * the corporation will mail notice thereof to each of the holders of the preferred stock." (Italics supplied.) This provision, amongst others, was also indorsed on the stock certificates themselves. It is claimed by the plaintiffs that the notice dated October 28, 1935, of the meeting on November 14, 1935, at which the readjustment plan was adopted,

was a notice of a meeting of less than thirty days prior to a reclassification of the capital stock of the corporation, and invalidated all the proceedings taken at such meeting.

To this claim the defendant interposed a series of defenses: (a) That the readjustment of its capital structure did not constitute a reclassification of its stock which required a thirty days' notice of meeting; (b) that the meeting complied with a by-law which required only a two weeks' notice thereof; (c) that the plaintiffs had failed to avail themselves of the right of appraisal granted them by sections 21 and 38 of the Stock Corporation Law; (d) that they were guilty of laches, and (e) that they had waived objection to the insufficiency of the notice and were thereby estopped from attacking the proceedings taken at the meeting. All of those are complete defenses and were held sufficient in law by the Appellate Division (256 App. Div. 1071). The establishment of any one of them must bar the plaintiffs' recovery.

The court is convinced that the change effected in 1935 in the capital structure of the defendant did not constitute a reclassification which required a thirty days' notice of meeting under the provisions of the amendment of 1927. While both the notice and the letter which accompanied it loosely referred to the proposed readjustment as a reclassification of stock, it is apparent that such readjustment, both as contemplated and as effected, constituted but a change of shares of one class into shares of another, and not a reclassification.

As it stood in 1935, section 36 of the Stock Corporation Law provided for eight separate changes in capital stock or capital which a corporation might effect by the filing of a certificate. Amongst those were the following: "(F) *To change all or any of its previously authorized shares without par value,* issued or unissued, *into a different number of shares* of the same class or *of any other class* or classes *without par value.* (G) *To classify or reclassify any shares,* either with or without par value." (Italics supplied.) What the defendant corporation sought to effect here was a change of its previously authorized stock, 80,000 shares of common and 30,000 shares of preferred, into 80,000 shares of new common stock, and an exchange of the old stock for the new on a specified ratio. It actually effected the proposed change by the filing of a certificate which was captioned in the exact language of subdivision (F) and which described its purposes in *hæc verbæ.* Every part of a statute must be viewed in connection with the whole to make all of its parts harmonize and to give a sensible effect to each, and since subdivision (G) provides separately for reclassification it must be given a meaning and

application separate and distinct from the changes of shares referred to in subdivision (F).

The Stock Corporation Law does not define " reclassification." The word occurs only in connection with the stock changes provided for in section 36. " Classification " is ordinarily defined as a grouping into classes. " Reclassification " is a regrouping. As used in paragraph (10) of the amendment of 1927 to the defendant's certificate of incorporation or in the stock certificates issued thereunder, the word can only be given the meaning assigned to it by the statute, and that meaning does not include such a change of shares as was effected by the defendant in 1935.

Since that change did not amount to a reclassification the notice provided for by paragraph (10) was not a prerequisite to the meeting called to effect the change. The only notice required was the statutory notice of from ten to forty days prescribed by section 45 of the Stock Corporation Law. That notice was concededly given.

In view of the conclusion reached by the court on the character of the change effected by the amendment of 1935 it becomes unnecessary to consider or pass upon the several other defenses interposed. Judgment is directed for the defendant, with costs. Thirty days' stay and sixty days to make a case.