FLORENCE W. BRILL et al., Suing for Themselves and All Other Stockholders of 551 Fifth Avenue, Inc., Similarly Situated, Respondents; CERTIFICATE ASSOCIATES, INC., et al., Interveners, Respondents; KURT E. FONTHEIM, Intervener, Appellant, and PHOEBE C. KLEIN et al., Appellants, v. CHARLES N. BLAKELEY et al., Respondents.

First Department, April 14, 1953.

*Stephen S. Bernstein* of counsel (*Martin Lippman* and *Sidney Kant* with him on the brief; *McLaughlin & Stern,* attorneys), for appellants.

*Edward Endelman* of counsel (*Daniel W. Blumenthal* with him on the brief; *Maurice B. & Daniel W. Blumenthal,* attorneys), for interveners, respondents.

*Stephen S. Bernstein* of counsel (*Barry & Katzman,* attorneys), for intervener, appellant.

*George E. Netter* of counsel (*A. Joseph Geist, William Netter* and *Miltor Waxenfeld* with him on the brief; *Geist & Netter,* attorneys), for Florence W. Brill and others, respondents.

*Max J. Rubin* of counsel (*Herbert Stern* with him on the brief; *Karelsen, Karelsen, Rubin & Rosenberg,* attorneys), for Charles N. Blakeley and others, respondents.

*Simon H. Rifkind* of counsel (*Paul J. Newlon* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for Fred F. French Investing Co., Inc., respondent.

CALLAHAN, J. We are concerned on this appeal with the rights of preferred stockholders of 551 Fifth Avenue, Inc. (hereinafter called the " Company "), a domestic corporation. We are asked to pass upon an order allowing a settlement of two certain actions, the nature of which will be detailed later. The Company was incorporated in 1925, by the Fred F. French Security Co., Inc. (hereinafter called " Security "), a real estate promoter, the public being induced by a prospectus to buy this preferred stock at $100 a share on a promise of 6% cumulative dividends and preferred repayments, with the right to all net earnings of the building to be erected before any interest would devolve on common stockholders. The purchaser of preferred stock also received a share of common as a bonus, and the promoters received a like share of common on each sale. The common stock had all voting rights, with no provision for cumulative voting, so that in fact Security and its successor, Fred F. French Investing Co., Inc. (hereinafter called " Investing "). had control and elected all directors from the beginning. In fact, since 1925, there never has been a meeting of the common stockholders.

No dividends have been paid since 1931, and the accumulated arrears presently due preferred stockholders amounts to about $8,000,000. The outstanding preferred stock has a capital value of about $7,000,000, so that $15,000,000 would have to be realized from the sole asset, i.e., the real estate at 551 Fifth Avenue,

before the common stockholders would receive any return. This real estate is presently valued at between $5,150,000 and $5,500,000, and it is subject to a mortgage of $3,300,000. The Company has cash and miscellaneous assets of $520,210, but owes general indebtedness said to be more than the latter sum, so that as against an equity of less than $2,500,000 in the real estate it would owe almost $15,000,000 to preferred stockholders, unless some change is made in the corporate setup.

The property has been managed for years by another French corporation, which receives annual fees and leasing commissions of over $40,000 a year. It was run at a loss for many years, but is now showing an operating profit. Of the approximately 71,810 shares of preferred stock outstanding, French interests own 19,692 shares, and they own 63% of the common stock.

Other French companies received building and architect's fees of over a half million dollars, when the building was erected. Anticipatory dividends labeled "interest" were paid from moneys borrowed from the parent French Company to preferred stockholders in the early years between 1925 and 1928, and before they were earned. It is claimed by the appellants that these payments were out of capital and were illegal. It is further asserted that certain items of $175,000 and $270,000 allegedly due to Investing and $392,000 due to Fred F. French Operators, Inc. (hereinafter called "Operators"), and carried as indebtednesses, are tainted with the illegality of the said improperly declared dividends.

In 1929, $10 a share was paid to each preferred stockholder in partial payment of his stock, so that the par value thereof is now $90 a share.

Two actions were commenced on behalf of preferred stockholders, both of which are representative in form. The first or Brill action commenced in 1946, sought to enjoin a special meeting of common stockholders called to reduce the par value of the preferred shares to $1 each. The complaint claimed that the reduction would adversely affect the rights of the preferred stock without any right to vote on such reduction. An injunction *pendente lite* against the reduction is outstanding in that action.

The second or Lennan action was commenced in 1947, seeking a judgment directing the compulsory dissolution of the corporation. This court upheld the sufficiency of the complaint in this second action (*Lennan* v. *Blakeley,* 273 App. Div. 767).

The parties to these actions entered into a stipulation of settlement, subject to approval of the court. The Special Term, after consolidating the actions, referred the question of the approval of the settlement to a Referee, who reported favorably after slight amendments. The court approved the report of the Referee. No notice of the proceedings before the Referee was given to preferred stockholders generally, but a copy of the Referee's report was sent by mail to each stockholder, with notice of the hearing thereon before the court.

The settlement provided, in substance:

(1) That the par value of the preferred stock be reduced from $100 a share to $1 a share.

(2) That the surplus arising from such reduction be available for use for any purpose for which surplus might be used, except that no dividend might be paid on the common stock so long as any shares of preferred stock are outstanding.

(3) That 551 should make an offer to all of its preferred shareholders (other than Investing or Operators or companies affiliated with them) to purchase from them for a limited period preferred stock at $21 per share.

(4) That 551 should borrow from Investing any money necessary to complete the purchase of the preferred stock.

(5) That the Company may, thereafter, from the surplus created by the reduction, purchase preferred stock, the amount so to be utilized to be restricted to an amount not in excess of the total dividends paid or declared on the preferred stock.

(6) That the Company's claimed indebtedness of $270,300 to Investing, and $392,000 to Operators be ratified and funded so as to be payable in ten annual installments with interest at 4% per annum.

(7) That Investing waive its claim to $175,000 for " interest " in lieu of dividends.

(8) That 551 pay all the expenses and the fees of counsel in the suits, the latter not to exceed $35,000.

(9) The amended certificate of incorporation is to provide for five directors, four to be elected by the common shareholders and one by the preferred shareholders.

(10) That the Company release Investing and Operators and all of their present and past directors from all liability whatsoever, and

(11) That the court determine whether the holders of preferred stock are entitled to vote on the proposed amendments.

Aside from the question as to the fairness of the plan, two

principal questions are presented on this appeal. The first is whether the court had jurisdiction to enter an order approving a settlement compromising all of the matters covered by the stipulation. The second is whether the settlement affected the rights of the preferred stockholders adversely, so as to entitle them to an appraisal of their stock or to vote on the proposal.

As to the first question of jurisdiction, it is to be remembered that the actions are representative and not derivative. Ordinarily, in a representative action the court may enter any judgment within the purview of the pleadings, and such judgment will be binding on all stockholders. However, it does not follow that the parties, even with approval of the court, can settle matters not within the purview of the actions. Perhaps, the parties could enter by consent any judgment that might be entered after a trial, but they could not by consent confer jurisdiction on the court to dispose of matters concerning property rights of stockholders not before the court or not so related to the suits as to be within the scope of the relief sought.

The two actions were to enjoin reduction of par value of the preferred stock and to enforce a dissolution of the corporation. It is not apparent what such actions had to do with (1) the object of vesting ultimate control in common stockholders rather than the preferred; (2) a scheme to purchase preferred stock out of a created surplus or to borrow money to carry that plan out; (3) ratifying the validity of the $270,300 and the $392,000 claims of creditors; and (4) releasing the French corporations and their directors from liability to " 551 " for misfeasance or malfeasance.

The parties could not have obtained judgments for such relief, if the cases had been tried. We are constrained to hold that the court could not assume to dispose of the enumerated matters by settlement and by such action bind stockholders not parties to the suits on the theory of representation. The right to bring a representative action arises from necessity where the parties are too numerous to be joined (Civ. Prac. Act, § 195). The theory of representation is one of implied agency. The extent of such an agency would be limited, we think, by the assumption that a suit would proceed to its ordinary ends, not to ends which a stockholder advised of the bringing of the action never could anticipate.

The second question is whether the preferred stockholders were adversely affected so as to be entitled to vote on the changes or to have an appraisal of their stock.

Prior to the 1943 amendments to the Stock Corporation Law, it had been held that an alteration in the capital structure like the present would warrant appraisal (*Matter of Kinney*, 279 N. Y. 423). Since said amendments, however, the alteration is required to affect the stockholder adversely (*McNulty v. W. & J. Sloane*, 184 Misc. 835, 838; *Matter of New York Hanseatic Corp.* [*Kings Co. Light Co.*], 200 Misc. 530; 1949 Report of N. Y. Law Revision Commission, pp. 486, 515–517). The reduction of par value of the preferred stock in conjunction with the newly assigned right in the corporation to defer payment of accrued cumulative dividends, while using its surplus to buy in the preferred stock, would seem to be contrary to the promise implied in the certificates of incorporation and the prospectus under which the stock was sold, and to affect the stockholders' rights adversely. True, the right to purchase is limited under the plan to an expenditure, after recapitalization, of no more for retirement of preferred stock than is paid to the preferred stockholders in dividends, but this merely means that the extent to which there is an adverse effect is somewhat lessened, but it is not removed by the limitation. We think that if this was an application to reclassify the capital stock under section 35 of the Stock Corporation Law so as to permit the changes sought to be effected by the settlement, it would be held that the stockholders were adversely affected by the change, and, therefore, an objecting stockholder would have had the right to an appraisal of his stock under subdivision 11 of section 38 of the Stock Corporation Law, and the right to vote under section 51 of the statute.

For the reasons indicated, we find that it was improper to approve the plan of settlement.

The order should be reversed, with costs to the appellants, and the motion denied.

BREITEL, J. (dissenting). I dissent and vote to modify the order of Special Term to the extent that the objecting preferred stockholders should be entitled to an appraisal if demand therefor is timely made. As so modified, the order appealed from should be affirmed.

COHN and VAN VOORHIS, JJ., concur with CALLAHAN, J.; DORE, J. P., concurs in result; BREITEL, J., dissents and votes to modify in opinion.

Order reversed, with costs to the appellants and the motion denied. Settle order on notice. [See 282 App. Div. 835.]