Irving H. Saypol, J.
In this special proceeding (Business Corporation Law, § 623, subd. [h], par. [1]), the two petitioning corporate shareholders sue for appraisal and payment for their shares in the respondent corporation. Petitioners contend they are dissenting shareholders whose interests were allegedly adversely affected by majority shareholder action in amending the certificate of incorporation of the respondent.
The respondent counterclaims, based on its alleged right to reacquire the shares, and demands judgment dismissing the petition and directing the petitioners to transfer their shares in return for payment of $100 per share as provided in respondent’s certificate of incorporation.
Forty years ago in 1925, petitioners and their affiliates among a group of property and liability insurance companies embarked upon a plan to build, own, and operate a building at 85 John Street in New York City to house the offices of their principal trade and service organization, National Board of Fire Underwriters (later and now American Insurance Association). They formed the respondent corporation and subscribed to its stock. The petitioners were original subscribers. From its inception, the building has been devoted almost exclusively to the intended purpose. For almost 30 years, the ownership of the stock continued uninterruptedly in the hands of the founders or other insurance companies like them. When, in 1954, a few of the shares were acquired by transfer to an individual nonmember of the principal trade association, the remaining insurance company members proceeded to reacquire those few shares and, furthermore, to assure by corporate action the continuation of the original plan restricting ownership of stock to members of the trade association. By unanimous vote the certificate of incorporation was duly amended to provide that if a stockholder ceased membership in the trade association or transferred shares to a nonmember, those shares could be redeemed at the option of the respondent at par value of $100, which was also their issue price, the option to be open for six months.
The continuing stockholders submitted their stock certificates on which the restriction is noted. Thereafter, through 1968, the respondent reacquired some 1,228 shares from various stockholders who withdrew, for one reason or another, from the principal trade association. It was the respondent’s custom to resell these .reacquired shares to new or other members of the trade and service organization at $100, the par value and the reacquisition price.
In January, 1969, the petitioners withdrew from the successor principal trade association, the American Insurance Association *991 (AIA). They rejected respondent’s notice to reacquire, contending that redemption was barred by subdivision (c) of section 512 of the Business Corporation Law (L. 1961, ch. 855, as amd. by L. 1963; ch. 738, both eif. Sept. 1,1963) which provides: “No redeemable common shares * * * shall be issued or redeemed unless the corporation at the time has outstanding a class of common shares that is not subject to redemption.”
The respondent had only one class of stock, all redeemable. Withdrawal of the petitioners was preceded by a shareholders’ meeting in December, 1968, where proposals initiated by the petitioners to (a) delete the redemption provision or (b) change the redemption price to appraised value, were voted down.
On May 2, 1969 the certificate of incorporation was duly amended to authorize a class of common stock not subject to redemption. The new stock was issued and subscribed to by members. The petitioners say that this action adversely affected the redeemability of their shares (Business Corporation Law, § 806, subd. [b], par. [6]) and that they should have appraisal.
This proceeding becomes something quite different, in the view that the counterclaim is for reacquisition of the shares pursuant to the condition of terminated membership, rather than redemption. In effect, the respondent now contends that the qualification or ownership of the stock created in 1955 is not redemption within the meaning of the change in the law which came eight years later. There is merit in the contention and limited but persuasive authority to support it. Doubtless, 15 years have passed before the respondent has sought to define the ownership restriction, but there was no occasion to do so before.
Literal reading of the statute is not controlling here. The asserted right, labeled redemption, must be viewed in the history of the parties and particularly the petitioners’ principals, the circumstances in which the restriction on transfer came into being in 1955, its intended purpose and the effect of the shareholders’ unanimous action in agreeing to this restriction. The purpose is stated in the October 28,1954 resolution of the board of directors 1 ‘ to insure that the ownership of the corporation be maintained in the member companies of the National Board of Fire Underwriters ”. This recorded the intention, preincorporation, that “ [t]he stock of the corporation is to be available to National Board members ”, which was restated to all stockholders in 1933 “ in order to preserve ownership among National Board members ”. Thereafter, throughout the period subsequent to the transfer of shares to the nonmember to amendment of the certificate of incorporation in 1955 to provide for *992 redemption, it is evident that restriction of ownership was the objective of the parties. Corporate finance, control, preferred ownership, or other considerations such as creditors’ rights or equity protection were not involved. This purpose, effected and executed without objection and adhered to until now, is not shown to parallel the usual features of a redemptive right, both acceptable and unacceptable.
“ The policy consideration justifying the creation of a class of redeemable preferred shares is to provide the corporation with an opportunity to liquidate senior claims on distributions of earnings or assets in favor of the residuary equity which is the aggregate of common shares. The same policy consideration is not applicable to redeemable common shares, and, in fact, there is an inherent contradiction between the concept of common shares as the basic venture capital of the corporation and the concept of redeemability which would permit the recall of common shares thus eliminating the cushion that would otherwise be available to creditors and preferred shareholders against any losses the corporation may incur. Furthermore, the use of ordinary callable common shares would permit the board of directors to oust some, but not all, of the common shareholders and thus deprive them of their residual right to the profits of the enterprise.” (2 White, N. T. Corporations [13th ed.], § 512.02, p. 5-253.)
“ Redeemable shares ordinarily are shares which are subject to being called for repurchase by the corporation subsequent to their issue. In this respect, the redemption feature is a restriction or limitation on the right of the shareholder to continue his financial interest in the corporation until dissolution and represents an opportunity for the corporation to liquidate senior claims on the distributions of earnings or assets in favor of the residuary equity.” (2 White, NT. T. Corporations [13th ed.], § 512.01, p. 5-251.)
“ Redeemable stock is usually regarded by businessmen as a debt which they are anxious to retire as soon as possible, so that corporate profits may go unrestrictedly to the common stockholders, the real owners of the corporation. Speedy redemption of such securities, with the consequent freedom from recurrent 1 interest payments ’ in the form of guaranteed (cumulative) dividends is therefore as desirable as the retirement of any other corporate obligation.” (Kessler, Share Repurchases Under Modern Corporation Laws, 28 Fordham L. Rev. 637, 645.)
These authorities show both the accepted purpose of a redemptive right, including the focus of its application, and that *993 redemption and its regulation are concerned with corporate liquidity for the protection of preferred shareholders and creditors. (See, also, 11 N. Y. Jur., Corporations, § 259 et seq.)
The option here in question bears only nominal resemblance to redemption. The respondent’s right is not broad and arbitrary. It is limited and becomes operative only by the act of the shareholder in terminating membership in the respondent. Its only purpose is to limit ownership eligibility. There is no indication that it affects the corporate structure, financial or otherwise, shareholders or creditors.
A similar distinction was made in Matter of West Waterway Lbr. Co. (59 Wash. 2d 310) where a by-law of a lumber trade corporation authorized the recall, retirement and cancellation of stock and it was held to be a right of reacquistion lacking the usual characteristics of a redemptive right. The corporate by-law there read (p. 315): “ in case of the death of any Stockholder or the dissolution of any corporate Stockholder or the insolvency or bankruptcy of any such Stockholder, or in case any such Stockholder voluntarily, for the period of one year, ceases to continue in the manufacture of lumber, then and in that event this corporation shall have the right to call in, retire and cancel the capital stock so held by such Stockholder, upon payment to the heirs, executors, trustees or successors in interest of such person or corporation of an amount equal to the book value but not exceeding par value of such stock. ’ ’
The petitioners dissenting from corporate action extending the duration of the corporation sought appraisal. The issue was whether the payment provision of the quoted by-law applied. The petitioners contended that the by-law was an unauthorized right of redemption. The court (pp. 319-320) disagreed: ‘ ‘ Respondents suggest that the quoted portion of the bylaw is in fact a provision for redemption of common stock and as such is invalid. ROW 23.01.440 authorizes redemption of preferred shares, but no mention is made in the statute of redeeming shares of common stock * * * We do not believe the bylaw may properly be construed as an attempt to authorize redemption. The purpose of the provision, when taken with the rest of the bylaws and with the articles of incorporation, is clear enough. Only persons defined as ‘ legitimate manufacturers of lumber on the Pacific Coast ’ are entitled to own shares of the Export Company. A shareholder who dies or goes out of business no longer qualifies. In order to implement the reasonable restriction of eligibility, it is essential that the Export Company have available to it some means of enforcement. The power of the Export Company to reacquire its shares is not a continuing one; indeed, it arises only upon events not within its control. *994 Redemption power, where it exists, usually enjoys a significantly different characteristic — aside from the controls imposed by law, it may be exercised at the will of the corporation, subject only to such restrictions regarding current financial status, impersonal selection of the group to be redeemed if less than the whole class is called, and such other limitations as may have been expressly stated.
11 Upon consideration of the terms of the bylaw in the context of the bylaws and the articles as a whole and the light they cast upon the nature of the particular corporation involved in the instant case, we conclude that Article VI does not contain a redemption provision.” (Emphasis supplied.)
The decision is persuasive for its singular analogy to this proceeding. Other controlling authority has not been found in the research of court and counsel.
To find a redemptive right here would be to impart to the plan of the petitioners and their co-shareholders features which were not intended. It would require a rigid application of the statute (Business Corporation Law, § 512, subd. [c]) to accept the respondent’s action as redemption. A right to reacquire or repurchase on the limited option of the respondent was all that was created. As such it is a reasonable restriction on the shareholders’ right of transfer (Allen v. Biltmore Tissue Corp., 2 N Y 2d 534).
The application is denied. The petition is dismissed and the respondent is granted judgment on the counterclaim.