OPINION OF THE COURT
David I. Schmidt, J.
Petitioners Nathan J. Celauro, individually, as preliminary executor of the estate of Gaetana Celauro and as the vested beneficial owner of shares of the respondent 4C Foods Corp. (4C Foods) held by certain trusts, petition for: (1) a judgment under Business Corporation Law §§ 623 and 806 providing that petitioners are entitled to payment of fair value for the respective shares of 4C Foods owned by them and directing a determination be had as to the fair value of such shares; (2) an order under CPLR 408 and Business Corporation Law § 623 (h) (4) granting petitioners leave to take pretrial discovery; and (3) an order pursuant to Business Corporation Law § 623 (h) (7) awarding petitioners the costs and expenses incurred in connection with this proceeding. Respondent cross-moves for an order: (1) pursuant to CPLR 404 (a) and 3211 (a) (1) and (7) dismissing the petition with prejudice; and (2) requiring petitioners to pay its costs and attorney’s fees pursuant to section 12.16 of the shareholders agreement (seventh amendment) and imposing sanctions against petitioners and their counsel pursuant to Rules of the Chief Administrator of the Courts (22 NYCRR) *638 § 130-1.1; or (3), in the alternative, transferring venue of this proceeding to Nassau County.
Respondent 4C Food’s cross motion is granted to the extent that the petition is dismissed. Respondent’s motion is otherwise denied.
Petitioners contend that, pursuant to Business Corporation Law §§ 623 and 806, they are entitled to a determination of the value of their shares in respondent and a judgment providing that respondent is required to pay petitioners fair value for their shares. According to petitioners, the event that triggered this statutory right of appraisal was respondent’s amendment of its certificate of incorporation that was filed with the Department of State on December 8, 2011 that provided for a four-to-one split of its nonvoting shares.
Respondent is a closely held, family owned corporation whose current president and chief executive officer, John Celauro, holds approximately 56% of its stock and, according to petitioners, controls a voting coalition that owns in excess of 75% of the stock. Petitioners represent that they are the direct or beneficial owners of 22.36% of respondent’s shares.[1] Petitioner Nathan Celauro owns 0.24% of the shares of respondent, and is the beneficial owner of an additional 1.84% of respondent’s shares.[2] Nathan Celauro is also the executor of the estate of his mother, Gaetana Celauro,[3] which owns 1.48% of respondent’s shares and is the beneficial owner of an additional 18.80% of its shares. Further, in her will, Gaetana Celauro distributed all of her interest in any shares she held in respondent to Nathan Celauro. Nathan Celauro filed a petition requesting probate of this will on or around December 21, 2011. Although Wayne Celauro, another son of Gaetana Celauro, had filed objections to the probate of the will, by way of a stipulation dated October 17, 2012, Wayne Celauro withdrew his objections and consented to the will being admitted to probate.
The minority and majority shareholders of respondent have had a contentious relationship for a number of years. In 2001, Nathan Celauro’s father, Sal Celauro, who was then the chair *639 man of respondent’s board, had accused John Celauro of misappropriation of corporate assets and self-dealing, and had thereafter commenced a lawsuit against John Celauro raising such claims. Gaetana Celauro continued this lawsuit following Sal Celauro’s death. Petitioners assert that John Celauro retaliated against the minority shareholders by passing amendments to respondent’s shareholders agreement that placed limitations on intra-family transfer of respondent’s shares.
As is relevant here, the transfer provisions of the fourth amendment to the amended and restated shareholders agreement (fourth amendment) require that any shareholder desiring to transfer shares (transferring shareholder) to a permitted shareholder (i.e., certain family members as defined in the amendments) must give notice of the intent to transfer the shares to the remaining shareholders and respondent, and allow the holders of the majority of the shares to approve or reject the transfer, or a portion thereof (fourth amendment § 4.3 [a]). To the extent that the holders of the majority of the shares reject the transfer, the fourth amendment requires that the transferring shareholder sell the shares for which transfer approval has not been granted to the respondent (fourth amendment § 4.3 [b]).
Following the adoption of the amendments, Gaetana Celauro commenced a declaratory judgment action against respondent requesting a declaration that the amendments were illegal and unenforceable on the ground that they constituted an unlawful restraint on transferability of the shares. The court, however, rejected Gaetana Celauro’s arguments, granted respondent’s motion for summary judgment and declared that the amendments are legal and enforceable (see Celauro v 4C Foods Corp., 30 Misc 3d 1204[A], 2010 NY Slip Op 52264[U] [Sup Ct, Nassau County 2010], affd 88 AD3d 846 [2d Dept 2011], Iv denied 19 NY3d 803 [2012]).
On December 2, 2011, respondent’s board of directors unanimously passed a resolution, and shareholders holding over a 75% interest in respondent adopted, by written consent, a resolution to amend respondent’s certificate of incorporation to increase the number of authorized nonvoting shares by four shares for every one nonvoting share outstanding, declare a dividend to the holder of each of the nonvoting shares by issuing four nonvoting shares for every one nonvoting share held, and amend the shareholders agreement accordingly. The amendment to the certificate of incorporation reflecting these changes *640 was filed with the Department of State on December 8, 2011. Respondent did not provide Gaetana Celauro and Nathan Celauro with notice of the amendment until December 7, 2011. Within a few days of receiving notice, Gaetana Celauro and Nathan Celauro sent notices to respondent giving notice, pursuant to Business Corporation Law § 623, of their election to dissent from respondent’s action in amending the certificate of incorporation and demanding payment of the fair value of their shares. Respondent, however, replied to Gaetana Celauro and Nathan Celauro’s notices by stating that the amendment to the certificate of incorporation increasing the number of nonvoting shares was not an action that provided a basis for Gaetana Celauro and Nathan Celauro to invoke the procedures of Business Corporation Law § 623. Upon respondent’s declining to recognize the applicability of section 623, petitioners commenced the instant proceeding and respondent has since moved to dismiss the petition.
Business Corporation Law § 623 lays out procedures for minority shareholders to object to majority actions and be paid a fair value for their shares. Where the corporation and dissenting shareholder cannot agree to the fair value of shares and the corporation does not initiate proceedings under section 623, section 623 allows a dissenting shareholder to commence a proceeding for the court to determine the value of the shares and require the corporation to pay that amount per share to the dissenting shareholder (Business Corporation Law § 623 [h]). Section 623, however, does not delineate when a shareholder may use its procedures. Here, petitioners assert they are entitled to relief under section 623 based on Business Corporation Law § 806 (b) (6), which provides:
“A holder of any adversely affected shares who does not vote for or consent in writing to the taking of such action [involving certain amendments to the certificate of incorporation] shall, subject to and by complying with the provisions of section 623 (Procedure to enforce shareholder’s right to receive payment for shares), have the right to dissent and to receive payment for such shares, if the certificate of amendment (A) alters or abolishes any preferential right of such shares having preferences; or (B) creates, alters or abolishes any provision or right in respect of the redemption of such shares or any sinking fund for the redemption or purchase of such shares; or (C) alters or abolishes any preemptive *641 right of such holder to acquire shares or other securities; or (D) excludes or limits the right of such holder to vote on any matter, except as such right may be limited by the voting rights given to new shares then being authorized of any existing or new class.”
As noted by the parties, there is little case law addressing what kind of corporate charter amendments implicate section 623 appraisal rights based on the provisions of section 806 (b) (6). It is evident from the limited case law available, however, that not all alterations to a corporation’s capital structure warrant appraisal (see Matter of Kinney, 279 NY 423, 430-431 [1939] [distinguished amendments that warranted appraisal rights from those that did not under former version of statute]; Standard Brewing Co. Inc. v Peachey, 202 Misc 279, 282-285 [Sup Ct, Monroe County 1951]). Of note, in this respect, amendments that include the creation of a new class of preferred stock or increase the amount of common stock are not deemed alterations warranting appraisal under section 806 (b) (6) (Matter of Kinney, 279 NY at 430-431; Standard Brewing Co. Inc., 202 Misc at 284). The courts have further emphasized that, as a result of a 1943 amendment to the prior version of the statute the language of which is continued in the current statute, the alteration to the capital structure must adversely affect the shareholder (see Brill v Blakeley, 281 App Div 532, 538 [1st Dept 1953 ], affd 308 NY 951 [1955]).
Here, petitioners assert that the amendment adversely altered their redemption and voting rights under Business Corporation Law § 806 (b) (6) (B) and (D). In making their argument, petitioners concede that the amendments, in and of themselves, did not directly alter their percentage ownership of respondent, the total value of the shares they hold or their voting rights. The changes relate to the number of shares and the per share value of their holdings,[4] and petitioners assert that the amendments, by lowering the per share value of the stock, will allow *642 the majority shareholders to more easily reduce or eliminate the voting shares through their control of the share transfer process under section 4.3 of the fourth amendment to the shareholders agreement. Petitioners assert that this issue is not merely hypothetical, in that Gaetana Celauro was on her deathbed at the time the majority shareholders decided to amend the certificate of incorporation in order to change the number of shares. Further, upon her death and probate of her will, the transfer of her shares or those held for her benefit from her estate to (presumably) Nathan Celauro is a transfer governed by section 4.3 of the fourth amendment. According to petitioners’ calculations, in light of the reduced per share value of the voting shares, the majority shareholders could reduce petitioners’ share holdings below the 20% mark necessary to petition for judicial dissolution under Business Corporation Law § 1104-a by declining to allow the transfer of only 341 of petitioners’ voting shares, which shares respondent could then purchase for a price approximately 80% less than the price they would formerly have had to pay.[5] In opposition and in support of its own motion, respondent argues that the amendment does not change petitioners’ preemption, redemption or voting rights for purposes of section 806 (b) (6), and that, as such, petitioners’ appraisal rights under Business Corporation Law § 623 have not been triggered.
Upon considering the language of the statute as interpreted by the extant court decisions, this court finds that the amendment here does not alter any of petitioners’ rights under section 806 (b) (6). In this regard, the splitting of the stock does not affect any right to a preference for purposes of section 806 (b) (6) (A) since, prior to the amendment, all of respondent’s stock was common stock and none of its stock carried with it any preferential rights (see generally Business Corporation Law § 501 [generally describes the differences between common stock and preferential stock]). With respect to section 806 (b) (6) (B), respondent’s limited right to repurchase shares under section 4.3 of the fourth amendment to the shareholders agreement upon a decision by a majority of the shareholders to reject all or *643 part of a transfer is not a redemption right for purposes of the statute (see Glens Falls Ins. Co. v National Bd. of Fire Underwriters Bldg. Corp., 63 Misc 2d 989, 991-994 [Sup Ct, NY County 1970], affd 36 AD2d 793 [1st Dept 1971], Iv denied 29 NY2d 482 [1971]). Likewise, the splitting of shares also does not directly affect any preemptive rights or voting rights (Business Corporation Law § 806 [b] [6] [C], [D]).
Even if the repurchase right contained in section 4.3 of the fourth amendment is deemed a redemption right, the amendment to respondent’s certificate of incorporation does not directly alter or change that right. The only possible adverse impact of the amendment, as argued by petitioners, is that it reduces the purchase price respondent would have to pay if the majority shareholders rejected a portion of a transfer under section 4.3. This appears to be an impact more attenuated than the kind of amendments to certificates of incorporation that have been found to implicate the protections of Business Corporation Law § 806 (b) (6). For example, amendments courts have found to implicate section 806 (b) (6) protections include: (1) changing the voting rights of preferred stockholders to allow them to vote on matters as to which previously only common shareholders had been allowed to vote (Matter of Marcus [Macy & Co.], 297 NY 38, 43-44 [1947]); (2) an amendment that, among other things, reduced the stated capital of a corporation by $1,440,000, and thereby reduced the security that safeguarded the rights of an older issue of preferred stock (Matter of Kinney, 279 NY at 431-432); (3) an amendment that retired old preferred stock and replaced it with new preferred stock with different rights (Matter of Silberkraus v Schaffer Stores Co., 250 NY 242, 243-246 [1929]);[6] (4) an amendment that increased the aggregate number of shares of the corporation, but at the same time abolished a shareholder’s preemptive rights to purchase enough of the shares to retain his or her percentage in the corporation (Matter of Carroll v Seacroft Plaza, 141 AD2d 724, 725-726 [2d Dept 1988]); (5) an amendment that, among other things, reduced the par value of preferred stock from $100 to $1 a share (see Brill, 281 App Div at 538); and (6) an amendment that *644 eliminated certain equity restrictions with respect to the payment of dividends for common stock was found to have an adverse impact on the preferred stockholders (see Matter of New York Hanseatic Corp. [Kings Co. Light. Co.], 200 Misc 530, 533-534 [Sup Ct, Kings County 1951]).
Accordingly, this court finds that the amendment at issue here does not constitute an adverse alteration for purposes of Business Corporation Law § 806 (b) (6), and that petitioners thus do not have a right to appraisal under Business Corporation Law § 623. This court notes, however, that respondent has not presented a business justification for increasing the number of shares, and, as such, petitioners’ concern that the majority shareholders may intend to take advantage of the reduced per share value of the corporation in order to pick off their voting shares may not be unreasonable. Nevertheless, the amendment at issue here is simply not one of the enumerated changes that would allow an appraisal action. It would appear that petitioners’ claim would be better addressed if and when the majority shareholders use section 4.3 of the fourth amendment to force a selective purchase by respondent of a portion of the shares to be transferred from Gaetana Celauro’s estate to Nathan Celauro in order to reduce the minority shareholders’ voting stake in respondent. At that time, petitioners may have an argument that any such limitation on the transfer by the majority shareholders would violate the fiduciary duty majority shareholders of a closely held corporation owe the minority shareholders (see Lirosi v Elkins, 89 AD2d 903, 906-907 [2d Dept 1982]; see also Schwartz v Marien, 37 NY2d 487, 491-493 [1975]; Giaimo v EGA Assoc. Inc., 68 AD3d 523, 524 [1st Dept 2009]; Lichtenberger v Long Is. Mach. Sales Corp., 71 AD2d 941, 947-948 [2d Dept 1979]).
Respondent’s request for sanctions, costs and attorney’s fees is denied. Respondent asserts that it is entitled to attorney’s fees and costs based upon section 12.16 of the shareholders agreement, as amended by the seventh amendment to the shareholders agreement. Section 12.16 allows respondent to obtain such costs and fees “in the event that any Shareholder (a ‘Plaintiff Shareholder’) initiates any lawsuit, arbitration or other action or proceeding (an ‘Action’) against the Corporation or any other Shareholder (the ‘Defendant’) to enforce or interpret this Agreement or any provisions hereof, and such Plaintiff Shareholder is not the prevailing party.” (Emphasis added.) Simply put, this action seeking to enforce petitioners’ *645 appraisal rights under Business Corporation Law §§ 623 and 806 (b) (6) based on the amendment to the certificate of incorporation splitting the number of shares of respondent’s stock is not an action seeking enforcement or interpretation of the shareholders agreement. Even if section 12.16 could be read more broadly, respondent’s request for costs and attorney’s fees must be denied because the intent to require the payment of costs and attorney’s fees for the instant statutory appraisal proceeding is not “unmistakably clear” from section 12.16’s language (see Mount Vernon City School Dist. v Nova Cas. Co., 19 NY3d 28, 39-40 [2012]). In addition, respondent is not entitled to sanctions against petitioners or their attorneys as petitioners’ claims, while rejected, are not frivolous, particularly in light of the paucity of case law addressing when a claim premised on Business Corporation Law § 806 (b) (6) may be brought.[7]

. Petitioners own the same proportion of voting and nonvoting shares of respondent.

. An appraisal proceeding premised on Business Corporation Law § 806 (b) (6) has no minimum stock ownership requirement (see Matter of Marcus [Macy & Co.], 297 NY 38, 44 [1947]). As such, Nathan Celauro has standing to bring this proceeding based on his ownership interest alone.

. Gaetana Celauro died on December 16, 2011.

. Petitioners represent that, prior to the amendment, they held 3,220 voting shares out of 14,400 voting shares and 206,080 nonvoting shares out of 921,600 nonvoting shares, and that following the amendment, they hold 3,220 out of 14,400 voting shares and 1,030,400 out of 4,608,000 nonvoting shares. Assuming, for example, that the petitioners’ share of respondent is worth $30,000,000, the value of each share has been reduced from $143.33 per share to $29.02 a share. At least when respondent purchases shares for which it has rejected a transfer under section 4.3 of the fourth amendment to the *642 shareholders agreement, the applicable appraisal process makes no distinction between voting and nonvoting shares in determining the value of the shares (shareholders agreement § 8.2 [b] [v]).

. For example, assuming the total shares to be valued at $30,000,000, and that the per share value of petitioners’ holdings has reduced from $143.33 to $29.02 as the result of the amendment, the purchase price for buying the 341 shares would be reduced from $48,875.53 to $9,895.82.

. Of note, the Court in Matter of Silberkraus questioned whether the alteration was truly adverse to the dissenting shareholders, but decided that, at least where the result of the alteration is not clear, the decision as to whether the change is detrimental is left to the shareholder (Matter of Silberkraus, 250 NY at 246). The Court, however, decided Matter of Silberkraus in 1929, several years before the 1943 amendment added the adverse impact requirement to the statute.

. Given that the petition has been dismissed, there is no need to reach petitioners’ alternative request that the venue be changed to Nassau County.